'The State of Missouri to the use of Annie M. Heye, Respondent, v. A. Frank et al., Appellants.

### St. Louis Court of Appeals, May 4, 1886.

1. PRACTICE—JUDGMENTS—PENAL BONDS.—In actions on penal bonds, judgment should be rendered for the penalty of the bond, with award of execution for the damages assessed.

2. SALES—DEBTOR AND CREDITOR—PREFERENCE.—The validity of a sale by a creditor to a third person, where a part of the consideration is the payment and cancellation of a claim of one of the vendor's creditors, can not be made to depend upon the good faith of the preference, but depends upon the good faith of the vendor and the vendee in the transaction of sale.

3. ——— A sale of personalty without delivery of the article sold is void as to the vendor's creditors.

APPEAL from the St. Louis Circuit Court, GEORGE W. LUBKE, Judge.

*Reversed and remanded.*

NATHAN FRANK and GILLIAM & FERRIS, for the appellants: The facts show a sale of property to which the law of preference of creditors does not apply. *Mac-Veiyh v. Baxter*, 82 Mo. 518; *Holmes v. Braidwood*, 82 Mo. 610; *Rupee v. Alkire*, 77 Mo. 641: *Forrester v. Moore*, 77 Mo. 651. The purchaser need not be actually aware of the intent on the part of the debtor to vitiate the sale. It is sufficient if it be shown that he had notice of such facts as would have put a man of ordinary prudence upon inquiry, which inquiry, made, with ordinary diligence, would have led to a knowledge of the fraudulent purpose or intent of the seller. *Jones v. Heatherington*, 45 Iowa 681; *Williamson v. Wachenheim*, 58 Iowa 279; *Weiss v. Brennan*, 41 Super. Ct. N. Y. (J. & S.) 177. The doctrine here asserted as to what consti-

tutes a *bona fide* purchaser has been applied with commendable accuracy by the supreme court of Missouri in recent cases. *Dougherty v. Cooper*, 77 Mo. 528 ; *Arnholt v. Hartwig*, 73 Mo. 485. The amount for which the judgment was asked in the petition was two thousand, seven hundred dollars ; the verdict of the jury was for two thousand, nine hundred and forty-three dollars, two hundred and forty-three dollars in excess of the amount asked for in the petition ; a judgment upon this verdict would certainly have been an error. *Kelly v. Third National Bank*, 64 Ill. 541 ; *Cox v. St. Louis*, 11 Mo. 431.

W. C. JONES and A. R. TAYLOR, for the respondent.

ROMBAUER, J., delivered the opinion of the court.

This is an action upon an indemnity bond, taken by the sheriff of the city of St. Louis, in certain proceedings by attachment, instituted by Abraham Frank *et al.*, against one Gutbrod.

The relatrix, Anna Heye, claimed the goods levied upon under the writ of attachment from the sheriff, and stated in her claim that she was in good faith the sole owner thereof, and that their value was three thousand, eight hundred dollars. There was no schedule of the goods attached to her claim. The sheriff, upon the request of the defendants, and other attaching creditors, had all the goods seized on the various writs of attachment, inventoried and appraised by sworn appraisers, who returned an appraisement showing a detailed valuation. The appraisement thus made gave the value of all the goods seized as amounting to two thousand, three hundred dollars, and the value of those seized upon the defendant's writ as amounting to one thousand, three hundred and fifty dollars.

The defendants thereupon executed the bond herein sued upon, which is in the penal sum of two thousand, seven hundred dollars. Upon the trial of the cause the jury found a verdict for the relatrix for two thousand,

nine hundred and forty-three dollars, or two hundred and forty-three dollars more than the penalty of the bond, and the amount sued for.   The defendants filed a motion for a new trial and in arrest of judgment, whereupon the relatrix first remitted two hundred and forty-three dollars, and, subsequently, upon suggestion of the court, the further sum of $519.99.   This being done, the court overruled the motions of the defendants, and entered judgment in favor of the relatrix for the residue of two thousand, one hundred and eighty dollars.

As in actions upon penal bonds judgment should be entered for the penalty, with an award of execution for the damages assessed, the judgment entry thus made was irregular.  This defect, however, might be corrected here, provided we come to the conclusion that the judgment should be permitted to stand in other respects.

Concerning the main facts of the controversy there is little dispute.   The evidence concedes that Gutbrod went into business in May, 1881, with a capital of two thousand dollars.   Of this amount three hundred dollars was his own money, and the residue borrowed from his mother-in-law, Louisa Heye, who is the mother of the present relatrix, and a resident of St. Charles, Missouri.   The evidence also concedes that Annie Heye, the relatrix, was, at the date of the alleged sale, Gutbrod's sister-in-law, clerking in his store, and possessed of no means whatever.

On the sixteenth of November, 1882, Gutbrod, being then in greatly embarrassed circumstances, and pushed by his creditors, executed a bill of sale of all the goods in the store to his sister-in-law.   To use his own words: "There was no inventory taken ; never took one while I was in business ; sold out lock, stock, and barrel, without an inventory ; we guessed at it ; that is the way we arrived at the price."

In other respects he states the transaction as follows : "On the fourteenth, after I saw him (his counsel), I went down to the store and saw my sister-in-law, the plaintiff

Annie M. Heye. I asked her whether she would like to buy the store, that the place was not paying me, that I was losing money every day. I told her she could run it under smaller expense, as she did not have so much to support; that I had a family to support, and I would only lose money to my creditors to continue in business. I told her I was going up to St. Charles to speak to her mother about it, and see whether we could make arrangements that she could buy it for her."

He then went to St. Charles, told his mother-in-law about it, and told her that she had better buy the place for Annie; that he wanted to pay her in full, and would turn the balance of the money he realized over to his creditors.

Next morning he and his mother-in-law went to his counsel, had a bill of sale written out, and three notes made by his mother-in-law, aggregating one thousand, nine hundred and twenty-six dollars, which bill of sale and notes he took down to the store, and, to use his own words: "I explained the thing to my sister-in-law, told her my mother-in-law had bought the place, and stated the price, and asked her if she was satisfied. She said she was. I showed her the bill of sale, and she indorsed the notes and handed them to me."

He further testified: "When I received the notes of one thousand, nine hundred and twenty-six dollars I went to work and had them discounted at the First National Bank in St. Charles for one thousand, eight hundred and seventy-four dollars. I let Mr. Jones (his counsel) have it to pay my other creditors, to make a settlement with them."

He also testified that, at that date, he owed all the parties he was dealing with. That he owed the defendant Frank & Sons one thousand, one hundred and fifty-two dollars, and that all the money realized from the sale would not pay his creditors, except his mother-in-law, more than thirty-five cents on the dollar.

The relatrix, Annie M. Heye, also testified on her own

behalf, and her testimony was substantially the same as Gutbrod's. She admitted that Gutbrod told her he was losing money all the time, and that the business was not paying him, and that she had at the date of the sale no means whatever. She further testified that as soon as she bought him out, she had a sign painted with her own name, which was put above the door, and he thereupon left the store.

All this testimony was given on behalf of the relatrix. There was no pretense that any other sale was made than the one to Annie M. Heye, or that a delivery was ever made to any one but her. As far as the evidence tended to show any sale at all, it was one made to Annie M. Heye, for which her mother advanced the purchase money in satisfying her own claim of one thousand, seven hundred dollars against Gutbrod, and giving him additional notes for one thousand, nine hundred and twenty-six dollars.

This being the testimony bearing upon the question of the validity of the sale, the defendants asked the court to instruct the jury as follows :

"The court declares the law to be that the principles governing conveyances by way of preferences to the vendor's creditors, have no applicability to the facts in evidence."

This instruction the court properly refused. While it announced a correct proposition of law the court could not legally instruct the jury that, "principles governing conveyanances by way of preferences to the vendor's creditors have no applicability to the facts," and in so doing turn them adrift on the great body of the law, to find out for themselves, as best they might, what such "*principles*" were.

It is not in the refusal of this instruction that the court committed error, but in giving a number of instructions on behalf of the plaintiff, which wholly ignored the distinction which was attempted to be presented by the above instruction of the defendants.

This error is manifest in most of the instructions

given on behalf of the plaintiff, against the defendants' objections, but appears most glaringly in the following part of the charge :

"The court declares the law to be that a debtor has the right to prefer one creditor over another, and if such debtor has not the means to pay all his debts he may pay one creditor in full, though he does not pay any other creditor.

"And the court further declares the law to be that a debtor may so pay a creditor by transferring to such creditor goods or other property in payment of the debt owing to such creditor.

"And, although the jury may believe that William Gutbrod sold the goods to Louisa Heye, or to Annie M. Heye, at her request, for the purpose of preferring said Louisa Heye in the collection of a debt due from said Gutbrod to said Louisa, yet that fact, if true, did not of itself make such sale of said goods void or fraudulent as to the other creditors of the said Gutbrod. And if the jury believe from the evidence that the goods in question were purchased from said Gutbrod by the relatrix, at their fair market value, and that the balance of the purchase price of said goods, after satisfying the debt due from said Gutbrod to Louisa Heye, was paid over to said Gutbrod in the notes of Louisa Heye, endorsed by relatrix, *and that said notes were paid by said Louisa Heye*, and that said sale to said Annie M. Heye was made for the purpose of preferring said Louisa Heye, in the payment of the debt due her from said Gutbrod, and with no intention to hinder, or delay, or *defraud* the creditors of said Gutbrod, *except so far as to prefer* said Louisa Heye in the payment of the said debt, then the plaintiff is entitled to recover."

All these instructions were given on a wrong conception of the issues before the jury. The issue before the jury was whether Annie M. Heye purchased the stock of goods in good faith from Gutbrod If she did so, and did it for an adequate consideration, it is immaterial whether the purchase money consisted of cash, or of the notes of

her mother endorsed by herself in part, and in part by the return to Gutbrod of his obligations to her mother.

If she did not make the purchase in good faith, for an adequate consideration, and in her own behalf, but for the purpose of enabling Gutbrod to pay her mother in full, and to hinder, delay, or defraud his other creditors, or for the purpose of putting him into a position to force a settlement with his other creditors, then the sale was fraudulent and void as to such other creditors *McVeagh v. Baxter*, 82 Mo. 518, 520; *McNichols v. Richter*, 13 Mo. App. 515, 520.

The instructions were furthermore calculated to mislead the jury in speaking of a sale by Gutbrod to Louisa Heye. There was absolutely no evidence of such a sale. If there had been, that sale would have been void as to Gutbrod's creditors, because there is no pretense in the evidence of any delivery to Louisa Heye. A sale to Annie M. Heye can only be supported on the theory that Louisa Heye acted as her agent in the transaction, in which event the relatrix Annie becomes chargeable with all the knowledge and information that Louisa possessed, as to the purposes and the intent which actuated Gutbrod in making the sale.

As the cause will be remanded for new trial we will suggest the propriety of the plaintiff relatrix amending her petition, which is technically inaccurate, and does not state the facts correctly.

We do not desire to control the discretion of trial courts in endeavoring to save a re-trial of a cause by enforcing a *remittitur*. In many cases this may properly be done. In a case, however, like the one at bar, where the gross excess in the jury's finding demonstrates that their verdict was at best the result of a total misapprehension of the case submitted to their consideration, the purposes of justice are better subserved by vacating their verdict at once.

All the judges concurring, the judgment is reversed and the cause remanded.