Hellman & Co. v. Bick.

B. Hellman & Co., Appellants, v. John Bick, Garnishee, etc., Respondent.

Kansas City Court of Appeals, November 20, 1893.

1. **Fraudulent Conveyances:** CREDITOR SECURING HIS DEBT. Where a creditor of an insolvent firm, without knowledge of any fraud, and only endeavoring to secure payment of his own claim, takes no more goods than is necessary, he is not answerable as garnishee of the firm at the suit of another creditor.

2. **Evidence:** TRIAL BEFORE COURT. The same rigid rules in regard to the admission and exclusion of evidence ought not to be enforced in a trial before the court, as before a jury, for it is not to be presumed that the court would, in its deliberation and judgment, be influenced by evidence that probably might probably mislead a jury.

*Appeal from the Audrain Circuit Court.*—Hon. E. M. Hughes, Judge.

Affirmed.

*John M. Barker* for appellant.

(1) In this case the partnership had ceased under a written contract to honestly settle the debts, and J. B. Harper's pretended sale of all the goods to John Bick was void. *Clayton v. Hardy*, 27 Mo. 536. (2) The transfer of the goods that night was fraudulent. If the intention of such a transfer is to defeat other creditors the deed as to them is fraudulent. *Henderson et al. v. Henderson*, 55 Mo. pp. 534, 555, 556, and cases cited. (3) While it is unquestionably true that a debtor may, in failing circumstances, prefer one creditor to the exclusion of another, that doctrine cannot be applied to this case because J. B. Harper had no right to prefer a creditor; he could only act under his contract to treat creditors fairly, and his departure from that contract

was simple rascality.  The two brothers, as partners, had already preferred creditors in writing and in an upright and honorable way, and J. B. Harper should not be allowed to conspire with Bick to swindle the others.  (4) The gross inadequacy of price in this case, taken with the other circumstances, establishes fraud on the part of Bick and J. B. Harper.  *Ames v. Gilmore*, 59 Mo. 537.

*W. W. Fry* for respondent.

(1) The case was tried before the court and the appellate court will not review the evidence or interfere with the finding of facts.  *Pierson v. Slifer*, 52 Mo. App. 273;  *Orr v. Rode*, 101 Mo. 399;  *McCullough v. Ins. Co.*, 21 S. W. Rep. 207–209.  (2) A fraudulent conveyance will not be set aside at the instance of creditors to the prejudice of a *bona fide* purchase from a fraudulent grantee.  *Gordon v. Ritenour*, 87 Mo. 54.  If the transfer by J. B. Harper was fraudulent on his part there was not an item of evidence that respondent had any knowledge of it.  That this was the finding of the trial court is apparent from the instruction given by the court for appellant.  (3) If J. W. and J. B. Harper were partners at the time of the sale to respondent (by the evidence J. B. Harper was the sole owner) one partner had the right to sell partnership property to pay the debts of the firm.  The property was under attachment, and it was properly sold to pay the debts. *Clark v. Rives*, 33 Mo. 579;  *Keck v. Fisher*, 58 Mo. 532; *Holt v. Simmons*, 16 Mo. App. 114.

ELLISON, J.—Plaintiffs obtained judgment against defendants and had garnishment served on Bick, the respondent here, who denied owing defendants or having any of their property.  The circuit court, on trial without a jury, found for Bick, and plaintiffs appealed.

There is nothing more in this case than a sale of personal property to Bick, one of the creditors of an insolvent firm having no knowledge of any fraud and only endeavoring to secure or obtain payment of his own claim, and taking no more goods than was necessary. The court found for Bick and there was testimony in the cause to support the finding. In such case we will not disturb the result, as has been so frequently stated.

It seems that defendants were partners in a small stock of drugs and groceries. That they bought their stock of drugs from Bick, paying him part cash and giving their note for $320. The groceries were purchased of grocery wholesale houses. Defendants concluded to separate and agreed between themselves that the defendant, J. B. Harper, should take the stock and assume the partnership debts. About the time the invoice was completed, a firm of the grocery creditors attached the property for their claim of $48. Bick, learning of this, set about to collect his note of $320, which resulted in his purchasing the stock from J. B. Harper for the amount of the attachment just referred to and his note of $320. He paid off the attachment, gave up his note and took possession of the goods. There was evidence tending to show that the goods were not worth more than the amount he paid for them, and there was no evidence tending to show that he was in any way knowingly connected with any fraud. In such case the sale is valid. See *Meyberg v. Jacobs*, 40 Mo. App. 128; *Tennent v. Rudy*, 53 Mo. App. 196; *State ex rel. v. Durant*, 53 Mo. App. 493.

Some objection was made as to the admission of testimony which we think is not of sufficient substance to affect the result, especially when it is considered that the case was heard by the court without a jury. Judge BURGESS, speaking for the supreme court in *McCullough*

*v. Ins. Co.*, in an opinion promulgated January 31, 1893, and not yet reported, says that when a cause is submitted to the court without a jury "the same rigid rules in regard to the admission and exclusion of evidence ought not to be enforced as if the case had been tried before a jury, for it is not to be presumed that the court would, in its deliberation and judgment, be influenced by evidence" that might probably mislead a jury.

The judgment will be affirmed.   All concur.